MICHAEL FAILLACE & ASSOCIATES, P.C.
Michael A. Faillace [MF-8436]
60 East 42nd Street, Suite 2540
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK -**
-------------------------------------------------------X
ESTEBAN MORALES, ALEJANDRO
MOLINA, ANDRES ROSARIO, CARLOS
ROMERO, CARMEN SIMON, DOMINGO
ROSARIO, HERNAN ALBERTO CANO
CADAVID, ROMAN CRUZ (a.k.a. RAMIRO
ROMAN ROJAS), JOHNNY LAPAIX, JOSE
ROMERO, JULIAN GUZMAN, MIGUEL
PAULINO, PEDRO CANIZARES, RAMON
ESTRELLA INFANTE, ANTONIO
MARTINEZ, JORGE RAYMUNDO
RIVERA, MARIA BUESTAN AGUAIZA,
MARIA CAMAS LUCERO, MARIA
CECILIA BUESTAN PAREDEZ, MAUNG
SOE, VINCENT ELLIOT, ALEJANDRA
SIMON and CARLOS PERI, *individually and
on behalf of others similarly situated,*

**COMPLAINT**

**ECF Case**

*Plaintiffs*,

-against-

THOMAS COLICCHIO, SISHA ORTUZAR
AND JEFFREY ZUROFSKY,

*Defendants.*

-----------------------------------------------------------X

    Plaintiffs Esteban Morales,  Alejandro Molina,  Andres Rosario,  Carlos Romero,

Carmen Simon, Domingo Rosario, Hernan Alberto Cano Cadavid, Roman Cruz (a.k.a. Ramiro

Roman Rojas), Johnny Lapaix, Jose Romero, Julian Guzman , Miguel Paulino , Pedro Canizares,

Ramon Estrella Infante, Antonio Martinez, Jorge Raymundo Rivera, Maria Buestan Aguaiza,

Maria Camas Lucero, Maria Cecilia Buestan Paredez, Maung Soe, Vincent Elliot, Alejandra Simon and Carlos Peri individually (collectively, "Plaintiffs"), by and through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as Thomas Colicchio, Sisha Ortuzar and Jeffrey Zurofsky, (collectively "Defendants") allege as follows:

## NATURE OF THE ACTION

1.      Plaintiffs are former employees of 'Wichcraft Management LLC (d/b/a 'Wichcraft), 'Wichcraft Operating LLC (d/b/a 'Wichcraft), 'Wichcraft Chelsea Piers LLC (d/b/a 'Wichcraft) (Collectively "The Corporations"), Thomas Colicchio, Sisha Ortuzar and Jeffrey Zurofsky.

2.      Defendants owned, operated, or controlled a chain of health food delis in New York City twelve of which were located at 11 East 20th Street , New York, NY 10003 (hereinafter "the Flat Iron location") 60 East 8th Street, New York, New York 10003 (hereinafter "the East Village location"), 397 Greenwich Street, New York, New York 10003 (hereinafter "the Tribeca location"), 555 5th Avenue, New York, New York 10017 (hereinafter "the Fifth Avenue location"),1 Rockefeller Plaza, New York, New York 10020, (hereinafter "the Rockefeller Plaza location"), 11 West 40th Street, New York, New York 10018 (hereinafter "the Bryant Park location"), 245 Park Avenue, New York, New York, 10167 (hereinafter "the Park avenue location"), 1 Park Avenue, New York, New York 10016 hereinafter ("the 33rd street location"), 440 East 29th Street, New York, New York, 11210 ("hereinafter the First Avenue location"), 269 27th Street , New York, New York 10011 ("hereinafter the Tunnel location"), Pier 62 at 12th Avenue, Chelsea Piers, New York  10011 ("hereinafter the Chelsea Pier location")

and 641 West 27th Street, New York, NY 10001 (hereinafter "the 27th Street location") all operating under the name "'Wichcraft."

3.    Upon information and belief, Individual Defendants Thomas Colicchio, Sisha Ortuzar and Jeffrey Zurofsky served as owners, managers, principals, or agents of The Corporations, and through these corporate entities operated the delis as a joint or unified enterprise.

4.    Plaintiffs are former employees of Defendants.

5.    Plaintiffs ostensibly were employed as delivery workers but they were required to spend a considerable part of their work day performing non-tipped, non-delivery duties, including various restaurant duties such as weighing meats, preparing sandwiches, coffee, yogurts, cookies, carrying and stocking deliveries in the storage area, stocking bottled and canned drinks in the refrigerator, assisting the kitchen staff , preparing salads, cutting fruits, warming up soups, cleaning tables, windows, kitchens, walls and bathrooms, arranging chairs, food running without tips, cutting peppers for the chef, dishwashing, arranging and stocking utensils, transporting food and other items to and from other locations (hereinafter the "non-tipped, non-delivery duties").

6.    At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage compensation for the hours per week that they worked.

7.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work without providing the minimum wage and overtime compensation required by federal and state law and regulations.

- 3 -

8.      Defendants employed and accounted for Plaintiffs as delivery workers in their payroll, but in actuality their duties required greater or equal time spent in non-tipped, non-delivery duties.

9.      Regardless, at all times Defendants paid these Plaintiffs at the tip-credit rate.

10.     Under state law, Defendants were not entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day (whichever was less in each day) (12 N.Y.C.R.R. §146).

11.     Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records to avoid paying Plaintiffs at the minimum wage rate and to enable them to pay Plaintiffs at the lower tip-credited rate by designating them as delivery workers instead of non-tipped employees.

12.     Defendants also maintained a policy and practice of requiring employees to purchase "tools of the trade" such as bicycles and other equipment necessary for their jobs at the employees' own expense.

13.     For at least six years prior to the filing of this action – the statute of limitations under the New York State Labor Law – continuing to the present, Defendants maintained a policy and practice of unlawfully appropriating Plaintiffs' tips and made unlawful deductions from Plaintiffs' wages.

14.     Plaintiffs now bring this action on behalf of themselves for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650 *et seq*. (the "NYLL"),, including applicable liquidated damages, interest, attorneys' fees, and costs.

- 4 -

15.     Pursuant to the terms of a Settlement Agreement filed on April 3, 2020 and

Approved by the Court on April 6, 2020, Individual Defendants were released without prejudice

from a prior action Index # 1:16-cv-03023-KPF, subject to a provisional release conditioned

upon payment of settlement funds per the settlement agreement.

16.     To date no funds have been paid per the settlement agreement and Defendants are

thus in default of the Settlement Agreement.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal

question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28

U.S.C. § 1367(a).

18.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all or a

substantial part of the events or omissions giving rise to the claims have occurred in this district.

Defendants maintain their corporate headquarters and offices within this district, and Defendants

operate their delis in this district. Further, Plaintiffs have been employed by Defendants in this

district.

## THE PARTIES

*Plaintiffs*

19.     Plaintiff Esteban Morales ("Plaintiff Morales" or "Mr. Morales") is an adult

individual residing in Queens County, New York.  Plaintiff Morales was employed by

Defendants from approximately November 2011 until on or about February 2013 at the Fifth

Avenue location, from approximately February 2013 until on or about October 2014 at the East

Village location and from approximately November 2014 until on or about December 2015 at the Tribeca location.

20.    Plaintiff Alejandro Molina ("Plaintiff Molina" or "Mr. Molina") is an adult individual residing in Queens County, New York.  Plaintiff Molina was employed by Defendants from approximately September 2009 until on or about June 2013 at the Fifth Avenue location, from approximately June 2013 until on or about October 2013 at the East Village location and from approximately November 2013 until December 2015 at the Fifth Avenue location.

21.    Plaintiff Andres Rosario ("Plaintiff Rosario" or "Mr. Rosario") is an adult individual residing in Bronx County, New York.  Plaintiff Rosario was employed by Defendants from approximately May 2010 until on or about March 2014 at the Flat Iron location, from approximately April 2014 until on or about September 2015 at the East Village location and from approximately September 2015 until December 2015 at the 27th Street location.

22.    Plaintiff Carlos Romero ("Plaintiff Romero" or "Mr. Romero") is an adult individual residing in Bronx County, New York. Plaintiff Romero was employed by Defendants from approximately November 2007 until on or about October 2014 at the Flat Iron location, from approximately October 2014 until on or about December 2014 and from approximately March 2015 until on or about November 2015 at the East Village location and from approximately November 2015 until on or about December 2015 at the Flat Iron location.

23.    Plaintiff Carmen Simon ("Plaintiff Simon" or "Ms. Simon") is an adult individual residing in Bronx County, New York.  Plaintiff Simon was employed by Defendants from approximately January 2006 until on or about December 2015 at the Tribeca location.

24.    Plaintiff Domingo Rosario ("Plaintiff Domingo" or "Mr. Domingo") is an adult individual residing in Bronx County, New York.  Plaintiff Domingo was employed by

Defendants from approximately March 2006 until on or about December 2015 at the Flat Iron location.

25.    Plaintiff Hernan Alberto Cano Cadavid ("Plaintiff Cano" or "Mr. Cano") is an adult individual residing in Elizabeth, New Jersey. Plaintiff Cano was employed by Defendants from approximately December 2009 until on or about March 2014 at the Flat Iron location, from approximately April 2014 until on or about March 2015 at the Tribeca location, from approximately March 2015 until on or about August 2015 at the 27th Street location, from approximately September 2015 until on or about October 2015 at the East Village location and from approximately November 2015 until December 2015 at the Flat Iron location.

26.    Plaintiff Roman Cruz (aka Ramiro Roman Rojas) ("Plaintiff Cruz" or "Mr. Cruz") is an adult individual residing in New York County, New York. Plaintiff Cruz was employed by Defendants from approximately March 2009 until on or about January 2012 at the Park Avenue location, from approximately January 2012 until on or about January 2014 at the Fifth Avenue and Rockefeller Center locations and from approximately January 2014 until on or about December 2015 at the Tribeca location.

27.    Plaintiff Johnny Lapaix ("Plaintiff Lapaix" or "Mr. Lapaix") is an adult individual residing in Bronx County, New York. Plaintiff Lapaix was employed by Defendants from approximately December 2013 until on or about March 2014 at the Fifth Avenue location, from approximately May 2014 until on or about October 2014 at the flat Iron location and from approximately October 2014 until December 2015 at the Tribeca location.

28.    Plaintiff Jose Romero ("Plaintiff Jose or "Mr. Jose) is an adult individual residing in Kings County, New York. Plaintiff Jose was employed by Defendants from approximately October 2010 until on or about April 2013 at the Tribeca location and from approximately

October 2013 until December 28, 2015 at the 5th Avenue location.

29.     Plaintiff Julian Guzman ("Plaintiff Guzman or "Mr. Guzman") is an adult individual residing in Queens County, New York. Plaintiff Guzman was employed by Defendants from approximately 2005 until on or about December 28, 2015 at the 27th Street location.

30.     Plaintiff Miguel Paulino ("Plaintiff Paulino or "Mr. Paulino") is an adult individual residing in New York County, New York.  Plaintiff Paulino was employed by Defendants from approximately October 2015 until December 28, 2015 at the Fifth Avenue location.

31.     Plaintiff Pedro Canizares ("Plaintiff Canizares" or "Mr. Canizares") is an adult individual residing in Union city, New Jersey.  Plaintiff Canizares was employed by Defendants from approximately May 2007 until December 28, 2015 at the 27th Street location.

32.     Plaintiff Ramon Estrella Infante ("Plaintiff Estrella" or "Mr. Estrella") is an adult individual residing in Bronx County, New York.  Plaintiff Estrella was employed by Defendants from approximately August 2009 until March 2010 at the Bryant Park location and from approximately March 2010 until December 28, 2015 at the Tribeca location.

33.     Plaintiff Antonio Martinez ("Plaintiff Martinez" or "Mr. Martinez") is an adult individual residing in Bronx County, New York.  Plaintiff Martinez was employed by Defendants from approximately September 2010 until September 2012 at both the Rockefeller Plaza and Fifth Avenue locations, from approximately September 2012 until on or about December 2013 at the Tribeca location and from approximately January 2013 until on or about February 2014 at the Flat Iron location.

34.     Plaintiff Jorge Raymundo Rivera ("Plaintiff Rivera" or "Mr. Rivera") is an adult

individual residing in Queens County, New York. Plaintiff Rivera was employed by Defendants from approximately June 2006 until on or about June 29, 2015at the Tunnel location.

35.    Plaintiff Maria Buestan Aguaiza ("Plaintiff Aguaiza" or "Ms. Aguaiza") is an adult individual residing in Queens County, New York. Plaintiff Aguaiza was employed by Defendants from approximately January 2009 until on or about January 2012 at the Park Avenue location and from approximately January 2012 until on or about December 28, 2015 at the Fifth avenue location.

36.    Plaintiff Maria Camas Lucero ("Plaintiff Camas" or "Ms. Camas") is an adult individual residing in Queens County, New York. Plaintiff Camas was employed by Defendants from approximately November 2009 until on or about December 2010 at the 33rd Street location, from approximately December 2010 until on or about April 2011 at the 1st avenue location, from approximately May 2011 until on or about July 14, 2012 at the Park Avenue location and from approximately September 2012 until on or about December 2015 at the Fifth avenue location.

37.    Plaintiff Maria Cecilia Buestan Paredez ("Plaintiff Buestan" or "Ms. Buestan") is an adult individual residing in Queens County, New York. Plaintiff Buestan was employed by Defendants from approximately January 2006 until on or about September 2015 at the Tunnel location.

38.    Plaintiff Maung Soe ("Plaintiff Soe or "Mr. Soe) is an adult individual residing in Queens County, New York.  Plaintiff Soe was employed by Defendants from approximately 2009 until on or about January 2015 at the Flat Iron location, and from approximately January 2015 until December 2015 at the Fifth Avenue location.

39.    Plaintiff Vincent Elliot ("Plaintiff Elliot" or "Mr. Elliot") is an adult individual residing in New York County, New York.  Plaintiff Elliot was employed by Defendants from approximately April 2014 until on or about May 2014 at the Fifth Avenue location, from approximately May 2014 until on or about October 2014 at the Flat Iron location, from approximately October 2014 until on or about April 2015 at the East Village location and from approximately April 2015 until on or about December 2015 at the Tribeca location.

40.    Plaintiff Alejandra Simon ("Plaintiff Simon" or "Ms. Simon") is an adult individual residing in New York County, New York.  Plaintiff Simon was employed by Defendants from approximately January 2010 until on or about April 30, 2014 at the Tribeca location.

41.    Plaintiff Carlos Peri ("Plaintiff Peri" or "Ms. Peri") is an adult individual residing in New York County, New York.  Plaintiff Peri was employed by Defendants from approximately November 2006 until on or about November 2012 at the Bryant Park location and from approximately November 2012 until on or about August 2016 at the Chelsea Pier location.

*Defendants*

42.    At all relevant times, Defendants owned, operated, or controlled a chain of health food delis twelve of which were located at 11 East 20th Street , New York, NY 10003 (hereinafter "the Flat Iron location") 60 East 8th Street, New York, New York 10003 (hereinafter "the East Village location"), 397 Greenwich Street, New York, New York 10003 (hereinafter "the Tribeca location"), 555 5th Avenue, New York, New York 10017 (hereinafter "the Fifth Avenue location"),1 Rockefeller Plaza, New York, New York 10020, (hereinafter "the Rockefeller Plaza location"), 11 West 40th Street, New York, New York 10018 (hereinafter "the

Bryant Park location"), 245 Park Avenue, New York, New York, 10167 (hereinafter "the Park

avenue location"), 1 Park Avenue, New York, New York 10016 ("hereinafter the 33rd street

location"), 440 East 29th Street, New York, New York, 11210 ("hereinafter the First Avenue

location"), 269 27th Street , New York, New York 10011 ("hereinafter the Tunnel location"),

Pier 62 at 12th Avenue, Chelsea Piers, New York  10011 ("hereinafter the Chelsea Pier location")

and 641 West  27th Street, New York, NY 10001 (hereinafter "the 27th Street location") all

operating under the name "'Wichcraft."

43.    Defendant Thomas Colicchio is an individual engaging (or who was engaged) in

business in this judicial district during the relevant time period. Defendant Thomas Colicchio is

sued individually in his capacity as an owner, officer and/or agent of The Corporations.

Defendant Thomas Colicchio possesses or possessed operational control over The Corporations,

an ownership interest in The Corporations, or controlled significant functions of The

Corporations.  He determined the wages and compensation of the employees of Defendants,

including Plaintiffs, and established the schedules of the employees, maintained employee

records, and had the authority to hire and fire employees.

44.    Defendant Sisha Ortuzar is an individual engaging (or who was engaged) in

business in this judicial district during the relevant time period. Defendant Sisha Ortuzar is sued

individually in her capacity as an owner, officer and/or agent of the The Corporations. Defendant

Sisha Ortuzar possesses or possessed operational control over The Corporations, an ownership

interest in The Corporations, or controlled significant functions of The Corporations.  She

determined the wages and compensation of the employees of Defendants, including Plaintiffs,

and established the schedules of the employees, maintained employee records, and had the

authority to hire and fire employees.

45.     Defendant Jeffrey Zurofsky is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Jeffrey Zurofsky is sued individually in his capacity as an owner, officer and/or agent of The Corporations. Defendant Jeffrey Zurofsky possesses or possessed operational control over The Corporations, an ownership interest in The Corporations, or controlled significant functions of The Corporations.  He determined the wages and compensation of the employees of Defendants, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

46.     Defendants operate a chain of health food delis located in various locations around Manhattan in New York City.

47.     Individual Defendants Thomas Colicchio, Sisha Ortuzar and Jeffrey Zurofsky possessed operational control over The Corporations, possessed an ownership interest in The Corporations, and controlled significant functions of The Corporations.

48.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

49.     Each Defendant possessed substantial control over Plaintiffs' working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, referred to herein.

50.     Defendants jointly employed Plaintiffs, and are Plaintiffs' employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

51.     In the alternative, Defendants constitute a single employer of Plaintiffs.

52.     Upon information and belief, Individual Defendants Thomas Colicchio, Sisha Ortuzar and Jeffrey Zurofsky operate The Corporations as either alter egos of themselves, and/or fail to operate The Corporations as entities legally separate and apart from themselves, by among other things:

a.     failing to adhere to the corporate formalities necessary to operate The Corporations as corporations;

b.     defectively forming or maintaining the The Corporations, by amongst other things, failing to hold annual meetings or maintaining appropriate corporate records;

c.     transferring assets and debts freely as between all Defendants;

d.     operating The Corporations for their own benefit as sole or majority shareholders;

e.     operating The Corporations for their own benefit and maintaining control over these corporations as closed corporations;

f.     intermingling assets and debts of their own with The Corporations;

g.     diminishing and/or transferring assets to avoid full liability as necessary to protect their own interests, and

h.     other actions evincing a failure to adhere to the corporate form.

53.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law.  Defendants had the power to hire and fire Plaintiffs,

- 13 -

control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for Plaintiffs' services.

54.     In each year from April 2010 to December 28, 2015, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

55.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the delis on a daily basis were goods produced outside of the State of New York.

*Individual Plaintiffs*

56.     Plaintiffs were former employees of Defendants who were ostensibly employed as delivery workers. However, they spent a considerable amount of time performing the non-tipped and non-delivery duties described above.

*Plaintiff Esteban Morales*

57.     Plaintiff Morales was employed by Defendants from approximately November 2011 until on or about February 2013 at the Fifth Avenue location, from approximately February 2013 until on or about October 2014 at the East Village location and from approximately November 2014 until on or about December 2015 at the Tribeca location.

58.     Defendants ostensibly employed Plaintiff Morales as a delivery worker.

59.     However, Plaintiff Morales also was required to spend a significant portion of his work day performing the non-tipped, non-delivery duties described above.

60.     Although Plaintiff Morales ostensibly was employed as a delivery worker, he spent over 20% of the work hours of each day performing non-delivery work.

61.     Plaintiff Morales regularly handled goods in interstate commerce, such as food

and other supplies produced outside the State of New York.

62.     Plaintiff Morales' work duties required neither discretion nor independent judgment.

63.     From approximately November 2011 until on or about February 2013, Plaintiff Morales worked from approximately 9:00 a.m. until on or about 3:15 p.m. Mondays through Fridays at the Fifth Avenue location (typically 31.25 hours per week).

64.     From approximately February 2013 until on or about October 2014, Plaintiff Morales worked from approximately 9:00 a.m. until on or about 3:15 p.m. Mondays through Fridays at the East Village location (typically 31.25 hours per week).

65.     From approximately October 2014 until on or about December 28, 2015, Plaintiff Morales worked from approximately 9:30 a.m. until on or about 1:30 p.m. Mondays and Tuesdays, and from approximately 9:30 a.m. until on or about 12:30 p.m. Wednesdays, Thursdays and Fridays at the Tribeca location (typically 17 hours per week).

66.     Throughout his employment with Defendants, Plaintiff Morales was paid $5.65 per hour by check.

67.     Defendants never granted Plaintiff Morales meal breaks or rest periods of any kind.

68.     Plaintiff Morales never was notified by the Defendants that his tips would be included as an offset for wages.

69.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Morales' wages.

70.     Defendants did not give any notice to Plaintiff Morales in English and in Spanish (Plaintiff Morales' primary language), of his rate of pay, employer's regular pay day, and such

other information as required by NYLL §195(1).

71.    Defendants required Plaintiff Morales to purchase "tools of the trade" with his own funds—including two bicycles, three helmets, 125 bicycle breaks per year, 25 sets of lights per year and $500 in bicycle maintenance per year.

*Plaintiff Alejandro Molina*

72.    Plaintiff Molina was employed by Defendants from approximately September 2009 until on or about June 2013 at the Fifth Avenue location, from approximately June 2013 until on or about October 2013 at the East Village location and from approximately November 2013 until December 2015 at the Fifth Avenue location.

73.    Defendants ostensibly employed Plaintiff Molina as a delivery worker.

74.    However, Plaintiff Molina also was required to spend a significant portion of his work day performing the non-tipped, non-delivery duties described above.

75.    Although Plaintiff Molina ostensibly was employed as a delivery worker, he spent over 20% of the work hours of each day performing non-delivery work.

76.    Plaintiff Molina regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

77.    Plaintiff Molina's work duties required neither discretion nor independent judgment.

78.    From approximately January 2010 until on or about June 2013, Plaintiff Molina worked from approximately 9:00 a.m. until on or about 2:30 p.m. Mondays through Fridays at the Fifth Avenue location (typically 27.5 hours per week).

79.    From approximately June 2013 until on or about October 2013, Plaintiff Molina worked from approximately 9:00 a.m. until on or about 2:30 p.m. Mondays through Fridays at

- 16 -

the East Village location (typically 27.5 hours per week).

80.     From approximately November 2013 until on or about December 2015, Plaintiff Molina worked from approximately 9:00 a.m. until on or about 2:30 p.m. Mondays through Fridays at the Fifth Avenue location (typically 27.5 hours per week).

81.     Throughout his employment with Defendants, Plaintiff Molina was paid his wages by check.

82.     From approximately February 2010 until on or about January 2011, Plaintiff Molina was paid $4.90 per hour by check.

83.     From approximately January 2011 until on or about December 2015, Plaintiff Molina was paid $5.65 per hour by check.

84.     Defendants never granted Plaintiff Molina meal breaks or rest periods of any kind.

85.     Plaintiff Molina never was notified by the Defendants that his tips would be included as an offset for wages.

86.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Molina's wages.

87.     Defendants did not give any notice to Plaintiff Molina in English and in Spanish (Plaintiff Molina's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

88.     Defendants required Plaintiff Molina  to purchase "tools of the trade" with his own funds—including one bicycle, a chain and lock, 3 sets of lights,   $300in maintenance per year and a helmet.

*Plaintiff Andres Rosario*

- 17 -

89.    Plaintiff Rosario was employed by Defendants from approximately May 2010 until on or about March 2014 at the Flat Iron location, from approximately April 2014 until on or about September 2015 at the East Village location and from approximately September 2015 until December 2015 at the 27th Street location.

90.    Defendants ostensibly employed Plaintiff Rosario as a delivery worker.

91.    However, Plaintiff Rosario also was required to spend a significant portion of his work day performing the non-tipped, non-delivery duties described above.

92.    Although Plaintiff Rosario ostensibly was employed as a delivery worker, he spent more than 20% of the time he worked each day performing non-delivery work.

93.    Plaintiff Rosario regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

94.    Plaintiff Rosario's work duties required neither discretion nor independent judgment.

95.    From approximately May 2010 until on or about March 2013, Plaintiff Rosario worked from approximately 9:00 a.m. until on or about 3:00 p.m. Mondays through Fridays at the flat Iron location (typically 30 hours per week).

96.    From approximately March 2013 until on or about March 2014, Plaintiff Rosario worked from approximately 10:00 a.m. until on or about 5:00 p.m. Mondays through Fridays at the flat Iron location (typically 35 hours per week).

97.    From approximately April 2014 until on or about September 2015, Plaintiff Rosario worked from approximately 9:00 a.m. until on or about 2:30 p.m. Mondays through Fridays at the East Village location (typically 27.5 hours per week).

98.    From approximately September 2015 until December 28, 2015, Plaintiff Rosario

worked from approximately 9:00 a.m. until on or about 2:30 p.m. Mondays through Fridays at the Chelsea Piers location (typically 27.5 hours per week).

99.    Throughout his employment with Defendants, Plaintiff Rosario was paid HIS WAGES by check.

100.    From approximately March 2010 until on or about December 2010, Plaintiff Rosario was paid $4.90 per hour by check.

101.    From approximately January 2011 until on or about December 2015, Plaintiff Rosario was paid $5.65 per hour by check.

102.    Defendants never granted Plaintiff Rosario meal breaks or rest periods of any kind.

103.    Plaintiff Rosario never was notified by the Defendants that his tips would be included as an offset for wages.

104.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Rosario's wages.

105.    Defendants did not give any notice to Plaintiff Rosario in English and in Spanish (Plaintiff Rosario's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

106.    Defendants required Plaintiff Rosario to purchase "tools of the trade" with his own funds—including 2 bicycles, a helmet, and $200 in bicycle maintenance each year.

*Plaintiff Carlos Romero*

107.     Plaintiff Romero was employed by Defendants from approximately November 2007 until on or about October 2014 at the Flat Iron location, from approximately October 2014 until on or about December 2014 and from approximately March 2015 until on or about

November 2015 at the East Village location and from approximately November 2015 until on or about December 2015 at the Flat Iron location.

108.    Defendants ostensibly employed Plaintiff Romero as a delivery worker.

109.    However, Plaintiff Romero was also required to spend a significant portion of his work day performing the non-tipped duties described above.

110.    Although Plaintiff Romero was ostensibly employed as a delivery worker, he spent over 20% of the time he worked each day performing non-delivery work throughout his employment with Defendants.

111.    Plaintiff Romero regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

112.    Plaintiff Romero work duties required neither discretion nor independent judgment.

113.    From approximately January 2010 until on or about October 2014, Plaintiff Romero worked from approximately 10:00 a.m. until on or about 3:30 p.m. Mondays through Fridays at the Flat Iron Location (typically 27.5 hours per week).

114.    From approximately October 2014 until on or about December 2014, Plaintiff Romero worked from approximately 10:00 a.m. until on or about 3:30 p.m. Mondays through Fridays at the East Village location (typically 27.5 hours per week).

115.    From approximately March 2015 until on or about June 2015, Plaintiff Romero worked from approximately 10:00 a.m. until on or about 6:30 p.m. Sundays through Fridays at the East Village Location (typically 51 hours per week).

116.    From approximately June 2015 until on or about November 2015, Plaintiff Romero worked from approximately 10:00 a.m. until on or about 6:30 p.m. Mondays through

Saturdays at the East Village Location (typically 51 hours per week).

117.    From approximately November 2015 until on or about December 28, 2015, Plaintiff Romero  worked from approximately 10:00 a.m. until on or about 6:30 p.m. Mondays through Fridays  at the Flat Iron Location (typically 42.5 hours per week).

118.    Throughout his employment with Defendants, Plaintiff Romero was paid his wages by check.

119.    From approximately February 2010 until on or about December 2010, Plaintiff Romero was paid $4.90 per hour by check.

120.    From approximately January 2011 until on or about December 28, 2015, Plaintiff Romero was paid $5.65 per hour by check.

121.    Defendants never granted Plaintiff Romero meal breaks or rest periods of any kind.

122.    Plaintiff Romero never was notified by the Defendants that his tips would be included as an offset for wages.

123.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Romero's wages.

124.    Defendants did not give any notice to Plaintiff Romero  in English and in Spanish (Plaintiff Romero's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

125.    Defendants required Plaintiff Romero to purchase "tools of the trade" with his own funds—including three bicycles, three helmets, three sets of chain and lock, rain pants and a rain jacket.

*Plaintiff Carmen Simon*

- 21 -

129.    Plaintiff Simon was employed by Defendants from approximately January 2006 until on or about December 2015 at the Tribeca location.

130.    Defendants ostensibly employed Plaintiff Simon as a delivery worker.

131.    However, Plaintiff Simon also was required to spend a significant portion of her work day performing the non-tipped duties described above.

132.    Although Plaintiff Simon ostensibly was employed as a delivery worker, she spent more than 20% of each work day performing non-delivery work throughout her employment with Defendants.

133.    Plaintiff Simon regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

134.    Plaintiff Simon's work duties required neither discretion nor independent judgment.

135.    From approximately January 2010 until on or about January 2011, Plaintiff Simon worked from approximately 8:00 a.m. until on or about 2:00 p.m. Wednesdays through Sundays (typically 30 hours per week).

136.    From approximately January 2011 until on or about November 2014, Plaintiff Simon worked from approximately 6:00 a.m. until on or about 2:00 p.m.  Wednesdays through Sundays (typically 40 hours per week).

137.    From approximately November 2014 until on or about December 28, 2015, Plaintiff Simon worked from approximately 7:00 a.m. until on or about 2:00 p.m. Tuesdays through Saturdays (typically 35 hours per week).

138.    Throughout her employment with Defendants, Plaintiff Simon was paid her wages by check.

139.    From approximately January 2010 until on or about December 2010, Plaintiff Simon was paid $4.90 per hour.

140.    From approximately January 2011 until on or about December 28, 2015, Plaintiff Simon was paid $5.65 per hour.

141.    Defendants never notified Plaintiff Simon that her tips would be included as an offset for wages.

142.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Simon's wages.

143.    From approximately October 2013 until on or about October 2014, Defendants required Plaintiff Simon to share a portion of the tips she received whenever she made catering deliveries with the cooks and cashiers.

144.    Defendants did not give any notice to Plaintiff Simon in English and in Spanish (Plaintiff Simon's primary language), of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

145.    Defendants required Plaintiff Simon to purchase "tools of the trade" with her own funds—including two shirts.

*Plaintiff Domingo Rosario*

146.    Plaintiff Domingo was employed by Defendants from approximately March 2006 until on or about February 5, 2016 at the Flat Iron location.

147.    Defendants ostensibly employed Plaintiff Domingo as a delivery worker.

148.    However, Plaintiff Domingo was also required to spend a significant portion of his work day performing the non-tipped duties described above.

149.    Although Plaintiff Domingo was ostensibly employed as a porter and then a delivery worker, he spent over 20% of the time he worked each day performing non-delivery work throughout his employment with Defendants.

150.    Plaintiff Domingo regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

151.    Plaintiff Domingo's work duties required neither discretion nor independent judgment.

152.    From approximately January 2010 until on or about November 2010 Plaintiff Domingo worked as a porter approximately eight hours per day for four days a week (typically 24 hours per week).

153.    From approximately November 2010 until on or about December 2011 Plaintiff Domingo worked as a delivery worker from approximately 9:00 a.m. until on or about 3:00 p.m. three days a week (typically 18 hours per week).

154.    From approximately December 2011 until on or about July 2014 Plaintiff Domingo  worked from approximately 9:00 a.m. until on or about 3:00 p.m. Sundays through Thursdays (typically 30 hours per week).

155.    From approximately July 2014 until on or about December 2015 Plaintiff Domingo  worked from approximately 8:00 a.m. until on or about 2:30 p.m. Mondays through Thursdays (typically 26 hours per week).

156.    Throughout his employment with Defendants, Plaintiff Domingo was paid his wages by check.

157.    From approximately January 2010 until on or about November 2010, Defendants paid Plaintiff Domingo $9.62 per hour.

158.    From approximately November 2010 until on or about December 2015, Defendants paid Plaintiff Domingo $5.65 per hour.

159.    Defendants never notified Plaintiff Domingo that his tips would be included as an offset for wages.

160.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Domingo's wages.

161.    Defendants did not give any notice to Plaintiff Domingo in English and in Spanish (Plaintiff Domingo's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

162.    Defendants required Plaintiff Domingo  to purchase "tools of the trade" with his own funds—including four bicycles, five locks, four or five lights, two bike gloves per year, and around $200 in bicycle repairs per year.

*Plaintiff Hernan Alberto Cano Cadavid*

163.    Plaintiff Cano was employed by Defendants from approximately December 2009 until on or about March 2014 at the Flat Iron location, from approximately April 2014 until on or about March 2015 at the Tribeca location, from approximately March 2015 until on or about August 2015 at the 27th Street location from approximately September 2015 until on or about October 2015 at the East Village location and from approximately November 2015 until December 2015 at the Flat Iron location.

164.    Defendants ostensibly employed Plaintiff Cano as a delivery worker.

165.    However, Plaintiff Cano was also required to spend a significant portion of his work day performing the non-tipped duties described above.

166.    Although Plaintiff Cano was ostensibly employed as a delivery worker, he spent more than 20% of the time he worked each day performing non-delivery work throughout his employment with Defendants.

167.    Plaintiff Cano regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

168.    Plaintiff Cano's work duties required neither discretion nor independent judgment.

169.    From approximately January 2010 until on or about March 2014, Plaintiff Cano worked from approximately 9:00 a.m. until on or about 3:00 p.m. Mondays through Fridays at the Flat Iron location (typically 30 hours per week).

170.    From approximately April 2014 until on or about March 2015, Plaintiff Cano worked from approximately 10:30 a.m. until on or about 3:30 p.m. Mondays through Fridays at the Tribeca location (typically 25 hours per week).

171.    From approximately March 2015 until on or about August 2015, Plaintiff Cano worked from approximately 10:30 a.m. until on or about 3:30 p.m. Mondays through Fridays at the 27th Street location (typically 25 hours per week).

172.    From approximately September 2015 until on or about October 2015, Plaintiff Cano worked from approximately 10:30 a.m. until on or about 3:30 p.m. Mondays through Fridays at the East Village location (typically 25 hours per week).

173.    From approximately November 2015 until on or about December 28, 2015, Plaintiff Cano worked from approximately 10:30 a.m. until on or about 3:30 p.m. Mondays through Fridays at the Flat Iron location (typically 25 hours per week).

174.    Throughout his employment with Defendants, Plaintiff Cano was paid his wages by check.

175.    From approximately February 2010 until on or about December 2010, Plaintiff Cano was paid $4.90 per hour.

176.    From approximately January 2011 until on or about December 28, 2015, Plaintiff Cano was paid $5.65 per hour.

177.    Defendants never granted Plaintiff Cano meal breaks or rest periods of any kind.

178.    Defendants never notified Plaintiff Cano that his tips would be included as an offset for wages.

179.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Cano's wages.

180.    Defendants did not give any notice to Plaintiff Cano in English and in Spanish (Plaintiff Cano's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

181.    Defendants required Plaintiff Cano to purchase "tools of the trade" with his own funds—including two bicycles, four sets of lights, two helmets, six pants a chain and lock and around $500 per year in bicycle repairs.

*Plaintiff Roman Cruz (aka Ramiro Roman Rojas)*

182.    Plaintiff Cruz was employed by Defendants from approximately March 2009 until on or about January 2012 at the Park Avenue location, from approximately January 2012 until on or about January 2014 at the Fifth Avenue and Rockefeller Center locations and from approximately January 2014 until on or about December 2015 at the Tribeca location.

183.    Defendants ostensibly employed Plaintiff Cruz as a delivery worker.

- 27 -

184.    However, Plaintiff Cruz also was required to spend a significant portion of his work day performing the non-tipped duties described above.

185.    Although Plaintiff Cruz was ostensibly employed as a delivery worker, he spent more than 20% of the time he worked each day performing non-delivery work throughout his employment with Defendants.

186.    Plaintiff Cruz regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

187.    Plaintiff Cruz's work duties required neither discretion nor independent judgment.

188.    From approximately January 2010 until on or about January 2012, Plaintiff Cruz worked from approximately 10:00 a.m. until on or about 3:00 p.m. Mondays through Fridays at the Park Avenue location (typically 25 hours per week).

189.    From approximately January 2012 until on or about January 2014, Plaintiff Cruz worked from approximately 11:00 a.m. until on or about 3:00 p.m. Mondays through Fridays at the Fifth Avenue location and from approximately 9:00 a.m. until on or about 3:00 p.m. on Saturdays at the Rockefeller Center location (typically 26 hours per week).

190.    From approximately January 2014 until on or about December 28, 2015, Plaintiff Cruz worked from approximately 9:00 a.m. until on or about 3:00 p.m. Mondays through Fridays and from approximately 10:00 a.m. until on or about 3:00 p.m. on Saturdays at the Tribeca location (typically 35 hours per week).

191.    Throughout his employment with Defendants, Plaintiff Cruz was paid his wages by check.

192.    From approximately January 2010 until on or about December 2010, Plaintiff Cruz was paid $4.90 per hour.

193.    From approximately January 2011 until on or about December 28, 2015, Plaintiff Cruz was paid $5.65 per hour.

194.    Plaintiff Cruz never was notified by the Defendants that his tips would be included as an offset for wages.

195.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Cruz's wages.

196.    In addition, Defendants required Plaintiff Cruz to share a portion of the large tips he received whenever he delivered large catering orders with the cooks and cashiers.

197.    Defendants did not give any notice to Plaintiff Cruz in English and in Spanish (Plaintiff Cruz's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

198.    Defendants required Plaintiff Cruz to purchase "tools of the trade" with his own funds—including four bicycles and four baskets.

*Plaintiff Johnny Lapaix*

199.    Plaintiff Lapaix was employed by Defendants from approximately December 2013 until on or about March 2014 at the Fifth Avenue location, from approximately May 2014 until on or about October 2014 at the flat Iron location and from approximately October 2014 until December 2015 at the Tribeca location.

200.    Defendants ostensibly employed Plaintiff Lapaix as a delivery worker.

201.    However, Plaintiff Lapaix also was required to spend a significant portion of his work day performing the non-tipped duties described above.

202.    Although Plaintiff Lapaix ostensibly was employed as a delivery worker, he spent over 20% of the time he worked each day performing non-delivery work.

203.    Plaintiff Lapaix regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

204.    Plaintiff Lapaix's work duties required neither discretion nor independent judgment.

205.    From approximately December 2013 until on or about March2014, Plaintiff Lapaix worked from approximately 10:00 a.m. until on or about 3:00 p.m. five days a week at the Fifth Avenue location (typically 25 hours per week).

206.    From approximately May 2014 until on or about October 2014, Plaintiff Lapaix worked from approximately 10:00 a.m. until on or about 6:00 p.m. six days a week at the Flat Iron location (typically 48 hours per week).

207.    From approximately October 2014 until December 28, 2015, Plaintiff Lapaix worked from approximately 10:00 a.m. until on or about 6:00 p.m. five days a week at the Tribeca location (typically 40 hours per week).

208.    Throughout his employment with Defendants, Plaintiff Lapaix was paid $5.65 per hour by check.

209.    Plaintiff Lapaix never was notified by the Defendants that his tips would be included as an offset for wages.

210.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Lapaix's wages.

211.    Defendants did not give any notice to Plaintiff Lapaix in English and in Spanish (Plaintiff Lapaix's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

212.    Defendants required Plaintiff Lapaix to purchase "tools of the trade" with his own

funds—including five bicycles, three helmets, and five pairs of gloves.

*Plaintiff Jose Romero*

213.    Plaintiff Jose was employed by Defendants from approximately October 2010 until on or about April 2013 at the Tribeca location and from approximately October 2013 until December 28, 2015 at the 5th Avenue location.

214.    Defendants ostensibly employed Plaintiff Jose as a delivery worker.

215.    However, Plaintiff Jose was also required to spend a significant portion of his work day performing the non-tipped duties described above.

216.    Although Plaintiff Jose was ostensibly employed as a delivery worker, he spent more than 20% of the time he worked each day performing non-delivery work throughout his employment with Defendants.

217.    Plaintiff Jose regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

218.    Plaintiff Jose's work duties required neither discretion nor independent judgment.

219.    From approximately January 2010 until on or about January 2011, Plaintiff Jose worked from approximately 9:00 a.m. until on or about 3:00 p.m. two days a week and from approximately 9:00 a.m. until on or about 2:00 p.m. two days a week at the Tribeca location (typically 22 hours per week).

220.    From approximately January 2011 until on or about April 2013, Plaintiff Jose worked from approximately 9:00 a.m. until on or about 3:00 p.m. three days a week and from approximately 9:00 a.m. until on or about 2:00 p.m. Two days a week at the Tribeca location (typically 25 hours per week).

221.    Throughout his employment with Defendants, Plaintiff Jose was paid his wages by check.

222.    From approximately October 2010 until on or about December 2010, Plaintiff Jose was paid $4.90 per hour.

223.    From approximately January 2011 until on or about December 28, 2015, Plaintiff Jose was paid $5.65 per hour.

224.    Defendants never notified Plaintiff Jose that his tips would be included as an offset for wages.

225.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Jose's wages.

226.    Defendants did not give any notice to Plaintiff Jose in English and in Spanish (Plaintiff Jose's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

227.    Defendants required Plaintiff Jose to purchase "tools of the trade" with his own funds—including two bicycles, two helmets, 4 sets of lights and $400 in bike repairs per year.

*Plaintiff Julian Guzman*

228.    Plaintiff Guzman was employed by Defendants from approximately 2005 until on or about December 28, 2015 at the 27th Street location.

229.    Defendants ostensibly employed Plaintiff Guzman as a delivery worker.

230.    However, Plaintiff Guzman also was required to spend a significant portion of his work day performing the non-tipped, non-delivery duties described above.

231.    Although Plaintiff Guzman ostensibly was employed as a delivery worker, he spent over 20% of the time he worked each day performing non-delivery work.

232.    Plaintiff Guzman regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

233.    Plaintiff Guzman's work duties required neither discretion nor independent judgment.

234.    From approximately January 2010 until December 28, 2015, Plaintiff Guzman worked from approximately 7:30 a.m. until on or about 12:30 p.m. Mondays through Fridays (typically 25 hours per week).

235.    Throughout his employment with Defendants, Plaintiff Guzman was paid his wages by check.

236.    From approximately January 2010 until on or about December 2010, Plaintiff Guzman was paid $4.90 per hour.

237.    From approximately January 2011 until on or about December 28, 2015, Plaintiff Guzman was paid $5.65 per hour.

238.    Defendants never granted Plaintiff Guzman meal breaks or rest periods of any kind.

239.    Defendants never notified Plaintiff Guzman that his tips would be included as an offset for wages.

240.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Guzman's wages.

241.    Defendants did not give any notice to Plaintiff Guzman in English and in Spanish (Plaintiff Guzman's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Miguel Paulino*

242.    Plaintiff Paulino was employed by Defendants from approximately October 2005 until December 28, 2015 at the Fifth Avenue location.

243.    Defendants ostensibly employed Plaintiff Paulino as a delivery worker and porter.

244.    However, Plaintiff Paulino also was required to spend a significant portion of his work day performing the non-tipped, non-delivery duties described above.

245.    Although Plaintiff Paulino ostensibly was employed as a delivery worker, he spent over 20% of the time he worked each day performing non-delivery work.

246.    Plaintiff Paulino regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

247.    Plaintiff Paulino's work duties require neither discretion nor independent judgment.

248.    From approximately January 2010 until on or about December 28, 2015, Plaintiff Paulino worked from approximately 7:00 a.m. until on or about 1:00 p.m. three days a week and from approximately 7:00 a.m. until on or about 1:30 p.m. two days a week at the Fifth Avenue location (typically 31 hours per week).

249.    Throughout his employment with Defendants, Plaintiff Paulino was paid his wages by check.

250.    From approximately January 2010 until on or about December 2010, Plaintiff Paulino was paid $4.90 per hour.

251.    From approximately January 2011 until on or about December 28, 2015, Plaintiff Paulino was paid $5.65 per hour.

252.    Defendants never granted Plaintiff Paulino meal breaks or rest periods of any kind.

- 34 -

253.    Defendants never notified Plaintiff Paulino that his tips would be included as an offset for wages.

254.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Paulino's wages.

255.    Defendants did not give any notice to Plaintiff Paulino in English and in Spanish (Plaintiff Paulino's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Pedro Canizares*

256.    Plaintiff Canizares was employed by Defendants from approximately May 2007 until December 28, 2015 at the 27th Street location.

257.    Defendants ostensibly employed Plaintiff Canizares as a delivery worker.

258.    However, Plaintiff Canizares also was required to spend a significant portion of his work day performing the non-tipped, non-delivery duties described above.

259.    Although Plaintiff Canizares ostensibly was employed as a delivery worker, he spent over 20% of the time he worked each day performing non-delivery work.

260.    Plaintiff Canizares regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

261.    Plaintiff Canizares's work duties required neither discretion nor independent judgment.

262.    From approximately January 2010 until on or about January 2014, Plaintiff Canizares worked from approximately 9:00 a.m. until on or about 2:00 p.m. Mondays through Fridays (typically 25 hours per week).

263.    From approximately January 2014 until on or about December 2014, Plaintiff

- 35 -

Canizares worked from approximately 9:00 a.m. until on or about 2:00 p.m. Mondays through Saturdays at the 27th Street location (typically 30 hours per week).

264.    From approximately January 2015 until on or about July 2015, Plaintiff Canizares worked from approximately 9:00 a.m. until on or about 2:00 p.m. five days a week at the 27th Street location (typically 25 hours per week).

265.    From approximately August 2015 until on or about December 28, 2015, Plaintiff Canizares worked from approximately 9:00 a.m. until on or about 5:00 p.m. five days a week (at the 27th Street location typically 40 hours per week).

266.    Throughout his employment with Defendants, Plaintiff Canizares was paid his wages by check.

267.    From approximately January 2010 until on or about December 2010, Plaintiff Canizares was paid $4.90 per hour.

268.    From approximately January 2011 until on or about December 28, 2015, Plaintiff Canizares was paid $5.65 per hour.

269.    Defendants never granted Plaintiff Canizares meal breaks or rest periods of any kind.

270.    Plaintiff Canizares never was notified by the Defendants that his tips would be included as an offset for wages.

271.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Canizares' wages.

272.    Defendants withheld a portion of Plaintiff Canizares's tips. Specifically, defendants withheld 3% of the tips customers wrote in for Plaintiff Canizares whenever he delivered catering orders.

273.    Defendants did not give any notice to Plaintiff Canizares in English and in Spanish (Plaintiff Canizares' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

274.    Defendants required Plaintiff Canizares to purchase "tools of the trade" with his own funds—including four bicycles, three helmets, 4 locks, 5 pants per year, 3 pairs of shoes and $300 in bike repairs per year.

*Plaintiff Ramon Estrella Infante*

275.    Plaintiff Estrella was employed by Defendants from approximately August 2009 until March 2010 at the Bryant Park location and from approximately March 2010 until December 28, 2015 at the Tribeca location.

276.    Defendants employed Plaintiff Estrella as a porter and ostensibly as a delivery worker.

277.    However, as a delivery worker Plaintiff Estrella was also required to spend a significant portion of his work day performing the non-tipped duties described above.

278.    Although Plaintiff Estrella ostensibly was employed as a delivery worker, he spent   more than 20% of the time he worked each day performing non-delivery work throughout his employment with Defendants.

279.    Plaintiff Estrella regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

280.    Plaintiff Estrella's work duties required neither discretion nor independent judgment.

281.    From approximately January 2010 until on or about March 2010, Plaintiff Estrella worked from approximately  8:00 a.m. until on or about 2:00 or 2:30 p.m. 3 days a week and from approximately 8:00 a.m. until on or about 3:00 p.m. one day a week as a porter at the Bryant Park location (typically 25 hours per week).

282.    From approximately March 2010 until on or about December 28, 2015, Plaintiff Estrella worked from approximately 11:00 a.m. until on or about 8:00 p.m.  Five days a week as a delivery worker at the Tribeca location (typically 45 hours per week).

283.    Throughout his employment with Defendants, Plaintiff Estrella was paid his wages by check.

284.    From approximately January 2010 until on or about December 2010, Plaintiff Estrella was paid $4.90 per hour.

285.    From approximately January 2011 until on or about December 28, 2015, Plaintiff Estrella was paid $5.65 per hour.

286.    Plaintiff Estrella never was notified by the Defendants that his tips would be included as an offset for wages.

287.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Estrella's wages.

288.    In addition, Defendants withheld a portion of Plaintiff Estrella's tips; specifically, when Plaintiff Estrella earned a large tip from a customer, defendants withheld a portion of the tip and shared it with the cooks, cashiers and other non-tip employees.

289.    Defendants did not give any notice to Plaintiff Estrella in English and in Spanish (Plaintiff Estrella's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

290.    Defendants required Plaintiff Estrella to purchase "tools of the trade" with his own funds—including two bicycles, two helmets, 6 sets of lights, and approximately $600 in bicycle repairs.

*Plaintiff Antonio Martinez*

291.    Plaintiff Martinez was employed by Defendants from approximately September 2010 until on or about September 2012 at both the Rockefeller Plaza and Fifth Avenue locations, from approximately September 2012 until on or about December 2013 at the Tribeca location and from approximately December 2013 until on or about February 2014 at the Flat Iron location.

292.    Defendants ostensibly employed Plaintiff Martinez as a delivery worker.

293.    However, Plaintiff Martinez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

294.    Although Plaintiff Martinez ostensibly was employed as a delivery worker, he spent more than 20% of the time he worked each day performing non-delivery work throughout his employment with Defendants.

295.    Plaintiff Martinez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

296.    Plaintiff Martinez's work duties require neither discretion nor independent judgment.

297.    From approximately September  2010 until on or about September 2013, Plaintiff Martinez worked from approximately 9:00 a.m. until on or about 4:30 p.m. Mondays through Fridays at both the Rockefeller Plaza and Fifth Avenue locations (typically 37.5 hours per week).

298.    From approximately September 2012 until on or about December 2013, Plaintiff Martinez worked from approximately 9:00 a.m. until on or about 4:30 p.m. Mondays through Fridays at the Tribeca location (typically 37.5 hours per week).

299.    From approximately December 2013 until on or about February 2014, Plaintiff Martinez worked from approximately 9:00 a.m. until on or about 1:00 p.m. at the flat Iron location (typically 30 hours per week)

300.    Throughout his employment with Defendants, Plaintiff Martinez was paid his wages by check.

301.    From approximately September 2010 until on or about December 2010, Plaintiff Martinez was paid $4.90 per hour.

302.    From approximately January 2011 until on or about December 28, 2015, Plaintiff Martinez was paid $5.65 per hour.

275.    Defendants never granted Plaintiff Martinez meal breaks or rest periods of any kind.

276.    Plaintiff Martinez never was notified by the Defendants that his tips would be included as an offset for wages.

277.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Martinez's wages.

278.    Defendants did not give any notice to Plaintiff Martinez in English and in Spanish (Plaintiff Martinez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

279.    Defendants required Plaintiff Martinez to purchase "tools of the trade" with his own funds—including four bicycles, three helmets, 4 locks, 5 pants per year,3 pairs of shoes and $300 in bike repairs per year.

*Plaintiff Jorge Raymundo Rivera*

308.    Plaintiff Rivera was employed by Defendants from approximately June 2006 until on or about June 29, 2015 at the Tunnel location.

309.    Defendants ostensibly employed Plaintiff Rivera as a delivery worker.

310.    However, Plaintiff Rivera was also required to spend a significant portion of his work day performing the non-tipped duties described above.

311.    Although Plaintiff Rivera was ostensibly employed as a delivery worker, he spent more than 20% of the hours he worked each day performing non-delivery work throughout his employment with Defendants.

312.    Plaintiff Rivera regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

313.    Plaintiff Rivera's work duties required neither discretion nor independent judgment.

314.    From approximately February 2010 until on or about June 29, 2015, Plaintiff Rivera worked from approximately 12:00 p.m. until on or about 6:30 p.m. Mondays through Thursdays and from approximately 12:00 p.m. until on or about 7:00 p.m. on Fridays at the Tunnel location (typically 33 hours per week).

315.    Throughout his employment with Defendants, Plaintiff Rivera was paid his wages by check.

316.    From approximately February 2010 until on or about December 2015, Plaintiff Rivera was paid $4.90 per hour for a portion of his hours worked and $8.25 per hour for the remainder.

317.    Defendants never granted Plaintiff Rivera meal breaks or rest periods of any kind.

318.    Defendants also deducted $2.50 on a daily basis from Plaintiff Rivera's pay falsely claiming it was for food they had given him, when in reality Plaintiff Rivera rarely had a chance to eat any food at his work place.

319.    Defendants never notified Plaintiff Rivera that his tips would be included as an offset for wages.

320.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Rivera's wages.

321.    In addition, Defendants withheld a portion of Plaintiff Rivera's tips.

322.    Defendants did not give any notice to Plaintiff Rivera in English and in Spanish (Plaintiff Rivera's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

323.    Defendants required Plaintiff Rivera to purchase "tools of the trade" with his own funds—including two bicycles, two helmets and repairs for approximately $400.

*Plaintiff Maria Buestan Aguaiza*

324.    Plaintiff Aguaiza was employed by Defendants from approximately January 2009 until on or about January 2012 at the Park Avenue location and from approximately January 2012 until on or about December 2015 at the Fifth Avenue location.

325.    Defendants ostensibly employed Plaintiff Aguaiza as a delivery worker.

- 42 -

326.    However, Plaintiff Aguaiza also was required to spend a significant portion of her work day performing the non-tipped duties described above.

327.    Although Plaintiff Aguaiza ostensibly was employed as a delivery worker, she spent over 20% of the hours she worked each day performing non-delivery work.

328.    Plaintiff Aguaiza regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

329.    Plaintiff Aguaiza's work duties required neither discretion nor independent judgment.

330.    From approximately January 2010 until on or about January 2012 Plaintiff Aguaiza worked from approximately 11:00 a.m. until on or about 3:00 p.m. three days a week and from approximately 11:00 a.m. until on or about 4:00 p.m. two days a week Mondays through Fridays at the park Avenue location(typically 20 hours per week).

331.    From approximately January 2012 until on or about 2014 Plaintiff Aguaiza worked from approximately 11:30 a.m. until on or about 4:00 p.m. 3 days a week and from approximately 11:30 a.m. until on or about 5:00 p.m. two days a week Mondays through Fridays at the Fifth Avenue location (typically 24.5 hours per week).

332.    From approximately 2014 until on or about December 2015, Plaintiff Aguaiza worked from approximately 10:30 a.m. until on or about 4:00 p.m. Mondays through Fridays at the Fifth avenue location (typically 27.5 hours per week).

333.    Throughout her employment with Defendants, Plaintiff Aguaiza   was paid her wages by check.

334.    From approximately January 2010 until on or about December 2010, Plaintiff Aguaiza   was paid $4.90 per hour.

335.    From approximately January 2011 until on or about December 2015, Plaintiff Aguaiza   was paid $5.65 per hour.

336.    Defendants never granted Plaintiff Aguaiza meal breaks or rest periods of any kind.

337.    Defendants also deducted $2.50 on a daily basis from Plaintiff Aguaiza's pay falsely claiming it was for food they had given her, when in reality Plaintiff Aguaiza rarely had a chance to eat any food at her work place.

338.    Defendants never notified Plaintiff Aguaiza that her tips would be included as an offset for wages.

339.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Aguaiza's wages.

340.    Defendants did not give any notice to Plaintiff Aguaiza in English and in Spanish (Plaintiff Aguaiza's primary language), of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

341.    Defendants required Plaintiff Aguaiza   to purchase "tools of the trade" with her own funds—including three shirts per year and three hats per year.

*Plaintiff Maria Camas Lucero*

342.    Plaintiff Camas was employed by Defendants from approximately November 2009 until on or about December 2010 at the 33rd Street location, from approximately December 2010 until on or about April 2011 at the 1st avenue location, from approximately May 2011 until on or about July 14, 2012 at the Park Avenue location and from approximately September 2012 until on or about December 2015 at the Fifth Avenue location.

343.    Defendants employed Plaintiff Camas as a porter and ostensibly as a delivery worker.

344.    However, Plaintiff Camas was also required to spend a significant portion of her work day performing the non-tipped duties described above.

345.    Although Plaintiff Camas was ostensibly employed as a delivery worker, she spent over 20% of the hours she worked each day performing non-delivery work.

346.    Plaintiff Camas regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

347.    Plaintiff Camas's work duties required neither discretion nor independent judgment.

348.    From approximately January 2010 until on or about December 2010, Plaintiff Camas worked from approximately 8:00 a.m. until on or about 5:00 p.m. three days a week, from approximately 6:30 a.m. until on or about 5:00 p.m. two days a week Mondays through Fridays; and from approximately 9:30 a.m. until on or about 2:00 p.m. on some Sundays at the 33rd street location (typically 48 to 52.5 hours per week).

349.    From approximately December 2010 until on or about April 2011, Plaintiff Camas worked from approximately 9:00 a.m. until on or about 5:00 p.m. Mondays through Fridays at the First avenue location (typically 40 hours per week).

350.    From approximately May 2011 until on or about July 2012, Plaintiff camas worked from approximately 8:00 a.m. until on or about 5:00 p.m. Mondays through Fridays at the Park Avenue location (typically 45 hours per week).

351.    From approximately September 2012 until on or about September 2015, Plaintiff Camas worked from approximately 11:00 a.m. until on or about 5:30 p.m.  Mondays through Saturdays at the Fifth avenue location (typically 39 hours per week).

352.    From approximately September 2015 until on or about December 28, 2015, Plaintiff Camas worked from approximately 11:00 a.m. until on or about 5:30 p.m. Mondays through Fridays at the fifth avenue location (typically 32.5 hours per week)

353.    Throughout her employment with Defendants, Plaintiff Camas was paid her wages by check.

354.    From approximately February 2010 until on or about December 2010, Plaintiff Camas was paid $4.90 per hour Mondays through Fridays, and $8.00 per hour on Sundays.

355.    From approximately January 2011 until on or about December 2015, Plaintiff Camas was paid $5.65 per hour.

356.    Defendants never notified Plaintiff Camas that her tips would be included as an offset for wages.

357.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff camas' wages.

358.    From approximately December 2010 until on or about April 2011, Defendants required Plaintiff camas to share a portion of her tips with fellow non tip workers.

359.    Defendants did not give any notice to Plaintiff Camas in English and in Spanish (Plaintiff Camas' primary language), of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

360.    Defendants required Plaintiff Camas to purchase "tools of the trade" with her own funds—including two pairs of shoes per year and 4 pants per year.

- 46 -

*Plaintiff Maria Cecilia Buestan Paredez*

361.     Plaintiff Buestan was employed by Defendants from approximately January 2006 until on or about September 2015 at the Tunnel location.

362.     Defendants ostensibly employed Plaintiff Buestan as a delivery worker and a food runner.

363.     However, Plaintiff Buestan was also required to spend a significant portion of her work day performing the non-tipped duties described above.

364.     Although Plaintiff Buestan was ostensibly employed as a delivery worker, she spent more than 20% of the hours she worked each day performing non-delivery work.

365.     Plaintiff Buestan regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

366.     Plaintiff Buestan's work duties required neither discretion nor independent judgment.

367.     From approximately January 2010 until on or about September 2015 Plaintiff Buestan worked from approximately 9:00 a.m. until on or about 2:00 p.m. Mondays through Fridays  at the Tunnel location (typically 25 hours per week).

368.     Throughout her employment with Defendants, Plaintiff Buestan was paid her wages by check.

369.     From approximately January 2010 until on or about December 2010, Plaintiff Buestan was paid $4.90 per hour.

370.     From approximately January 2011 until on or about September 2015, Plaintiff Buestan was paid $5.65 per hour.

371.    From approximately February 2010 until on or about September 2015, Defendants never granted Plaintiff Buestan meal breaks or rest periods of any kind.

372.    During this period of time, Defendants deducted $2.50 on a daily basis from Plaintiff Buestan's pay falsely claiming it was for food they had given her, when in reality Plaintiff Buestan rarely had a chance to eat any food at her work place.

373.    Defendants never notified Plaintiff Buestan that her tips would be included as an offset for wages.

374.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Buestan's wages.

375.    Defendants did not give any notice to Plaintiff Buestan in English and in Spanish (Plaintiff Buestan's primary language), of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

376.    Defendants required Plaintiff Buestan to purchase "tools of the trade" with her own funds—including uniforms.

*Plaintiff Maung Soe*

377.    Plaintiff Soe was employed by Defendants from approximately 2009 until on or about January 2015 at the Flat Iron location, and from approximately January 2015 until December 2015 at the Fifth Avenue location.

378.    Defendants ostensibly employed Plaintiff Soe as a delivery worker.

379.    However, Plaintiff Soe also was required to spend a significant portion of his work day performing the non-tipped, non-delivery duties described above.

380.    Although Plaintiff Soe ostensibly was employed as a delivery worker, he spent more than 20% of the time he worked each day performing non-delivery work.

381.    Plaintiff Soe   regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

382.    Plaintiff Soe's work duties required neither discretion nor independent judgment.

383.    From approximately January 2010 until on or about January 2015, Plaintiff Soe worked from approximately 8:00 a.m. until on or about 2:00 p.m. Mondays, Tuesdays, Thursdays and Fridays and from approximately 7:00 a.m. until on or about 1:00 p.m. on Wednesdays at the flat Iron location (typically 30 hours per week).

384.    From approximately January 2015 until on or about July 2015, Plaintiff Soe worked from approximately 7:00 a.m. until on or about 1:00 p.m. Mondays through Thursdays at the Fifth Avenue location (typically 24 hours per week).

385.    From approximately September 2015 until on or about December 2015, Plaintiff Soe worked from approximately 7:00 a.m. until on or about 1:30 p.m. Tuesdays through Thursdays at the Fifth avenue location (typically 18 hours per week).

386.    Throughout his employment with Defendants, Plaintiff Soe was paid his wages by check.

387.    From approximately January 2010 until on or about December 2010, Plaintiff Soe was paid $4.90 per hour.

388.    From approximately January 2011 until on or about December 2015, Plaintiff Soe was paid $5.65 per hour.

389.    Defendants never granted Plaintiff Soe meal breaks or rest periods of any kind.

390.    Plaintiff Soe never was notified by the Defendants that his tips would be included as an offset for wages.

391.    Defendants did not account for these tips in any daily or weekly accounting of

Plaintiff Soe's wages.

392.    Defendants did not give any notice to Plaintiff Soe of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

393.    Defendants required Plaintiff Soe to purchase "tools of the trade" with his own funds—including 2 bicycles, a helmet, 5 pairs of pants, 9 pairs of shoes, and $300 in bicycle maintenance each year.

*Plaintiff Vincent Elliot*

394.    Plaintiff Elliot was employed by Defendants from approximately April 13, 2014 until on or about May 2014 at the Fifth Avenue location, from approximately May 2014 until on or about October 2014 at the Flat Iron location, from approximately October 2014 until on or about April 2015 at the East village location, and from approximately April 2015 until February 5, 2016 at the Tribeca Location.

395.    Defendants ostensibly employed Plaintiff Elliot as a delivery worker.

396.    However, Plaintiff Elliot also was required to spend a significant portion of his work day performing the non-tipped, non-delivery duties described above.

397.    Although Plaintiff Elliot ostensibly was employed as a delivery worker, he spent more than 20% of the time he worked each day performing non-delivery work.

398.    Plaintiff Elliot   regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

399.    Plaintiff Elliot's work duties required neither discretion nor independent judgment.

400.    From approximately April 2014 until on or about May 2014, Plaintiff Elliot worked an average of about 30 hours per week as a delivery worker at the Fifth Avenue location.

401.    From approximately May 2014 until on or about October 2014, Plaintiff Elliot worked an average of about 35 hours per week as a delivery worker at the Flat Iron location.

402.    From approximately October 2014 until on or about April 2015, Plaintiff Elliot worked an average of about 40 hours per week as a delivery worker at the East Village location.

403.    From approximately April 2015 until on or about February 5, 2016, Plaintiff Elliot worked an average of about 35 hours per week as a delivery worker at the Tribeca location.

404.    Throughout his employment with Defendants, Plaintiff Elliot was paid his wages by check.

405.    From approximately April 2014 until on or about February 2016, Plaintiff Elliot was paid $5.65 per hour.

406.    Defendants never granted Plaintiff Elliot meal breaks or rest periods of any kind.

407.    Plaintiff Elliot never was notified by the Defendants that his tips would be included as an offset for wages.

408.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Elliot's wages.

409.    Defendants did not give any notice to Plaintiff Elliot of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

410.    Defendants required Plaintiff Elliot to purchase "tools of the trade" with his own funds—including 2 bicycles, a helmet, 5 pairs of pants, 9 pairs of shoes, and $300 in bicycle maintenance each year.

*Plaintiff Alejandra Simon*

411.    Plaintiff Simon was employed by Defendants from approximately October 2007

until on or about April 30, 2014 at the Tribeca location.

412.    Defendants ostensibly employed Plaintiff Simon as a delivery worker.

413.    However, Plaintiff Simon also was required to spend a significant portion of her work day performing the non-tipped, non-delivery duties described above.

414.    Although Plaintiff Simon ostensibly was employed as a delivery worker, she spent more than 20% of the time she worked each day performing non-delivery work.

415.    Plaintiff Simon  regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

416.    Plaintiff Simon's work duties required neither discretion nor independent judgment.

417.    From approximately January 2010 until on or about April 30, 2014, Plaintiff Simon  worked from approximately 6:00 a.m. until on or about 2:00 p.m. Mondays through Fridays and from approximately 10:00 a.m. until on or about 3:00 p.m. on Saturdays at the Tribeca location (typically 45 hours per week).

418.    Throughout her employment with Defendants, Plaintiff Simon  was paid her wages by check.

419.    From approximately January 2010 until on or about December 2010, Defendants paid Plaintiff Simon $4.90 per hour.

420.    From approximately January 2011 until on or about April 30, 2014, defendants paid Plaintiff Simon $5.65 per hour.

421.    Plaintiff Simon never was notified by the Defendants that her tips would be included as an offset for wages.

422.    Defendants did not account for these tips in any daily or weekly accounting of

Plaintiff Simon's wages.

423.    Defendants did not give any notice to Plaintiff Simon in English and in Spanish (Plaintiff Simon's primary language), of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

424.    Defendants required Plaintiff Simon to purchase "tools of the trade" with her own funds—including 5 Wichcraft shirts per year, 3 Wichcraft caps, 3 pairs of pants, and 4 pairs of shoes.

*Plaintiff Carlos Peri*

425.    Plaintiff Peri was employed by Defendants from approximately November 2006 until on or about November 2012 at the Bryant Park location and from approximately November 2012 until on or about October 16, 2016 at the Chelsea Pier location.

426.    Defendants ostensibly employed Plaintiff Peri as a porter and then as a cook.

427.    Plaintiff Peri regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

428.    Plaintiff Peri's work duties required neither discretion nor independent judgment.

429.    From approximately October 2010 until on or about November 2012, Plaintiff Peri worked from approximately 7:00 a.m. until on or about 5:00 p.m. Mondays through Fridays at the Bryant Park location as a porter (typically 50 hours per week).

430.    From approximately November 2012 until on or about August 2016, Plaintiff Peri worked from approximately 7:00 a.m. until on or about 3:00 p.m. three days a week, and from approximately 7:00 a.m. until on or about 5:00 p.m. two days a week at the Chelsea Pier location as a cook (typically 44 hours per week).

431.    From approximately August 2016 until on or about October 16, 2016, Plaintiff

Peri worked from approximately 7:00 a.m. until on or about 3:00 p.m. five days a week at the Chelsea Pier location as a cook (typically 40 hours per week).

432.    From approximately October 2010 until on or about November 2012, Plaintiff Peri was paid $9.50 per hour for his regular hours and $12.00 per hour for some of his overtime hours.

433.    From approximately November 2012 until on or about August 2016, Plaintiff Peri was paid $12.00 per hour for his regular hours and $16.50 per hour for some of his overtime hours.

434.    From approximately August 2016 until on or about October 16, 2016, Plaintiff Peri was paid $12.00 per hour for some of his hours (for about 29 to 37 hours per week).

435.    Defendants never granted Plaintiff Peri meal breaks or rest periods of any kind.

436.    Plaintiff Peri never was notified by the Defendants that his tips would be included as an offset for wages.

437.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Peri' wages.

438.    Defendants did not give any notice to Plaintiff Peri in English and in Spanish (Plaintiff Peri' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

439.    Defendants required Plaintiff Peri to purchase "tools of the trade" with his own funds—including 4 pair of shoes.

*Defendants' General Employment Practices*

- 54 -

440.    At all times relevant to this Complaint, Defendants maintained a policy of requiring some Plaintiffs to work in excess of 40 hours a week without paying them appropriate minimum wage and overtime, as required by federal and state laws.

441.    Plaintiffs have been victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

427.    Defendants also maintained a policy and practice of requiring employees to purchase "tools of the trade" such as bicycles and other equipment necessary for their jobs at the employees' own expense.

428.    As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL.

429.    This policy and pattern or practice included depriving tipped workers of a portion of the tips earned during the course of employment.

430.    Defendants unlawfully misappropriated charges purported to be gratuities, received by Plaintiffs and other tipped workers in violation of New York Labor Law § 196-d (2007).

431.    Plaintiffs were illegally required to share their tips with non-tip workers such as cooks and cashiers.

432.    In addition, Defendants retained and/or misappropriated tips paid by patrons for catering orders.

433.    Defendants required certain customers to pay a percentage of their bills as a gratuity. However, Defendants did not distribute this gratuity in its entirety to tipped employees.

434.    Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage.

435.    At no time did the Defendants informed the Plaintiffs that they reduced their hourly wage by a tip allowance.

436.    Defendants required the Plaintiffs to perform general non-delivery, non-tipped duties in addition to their primary duties as delivery workers.

437.    Plaintiffs were employed ostensibly as tipped employees by Defendants, although their actual duties included greater or equal time spent performing non-tipped duties.

438.    Plaintiffs were paid at the lowered tip-credited rate by Defendants; however, under state law Defendants were not entitled to a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever was less) (12 N.Y.C.R.R. § 146).

439.    New York State regulations provide that an employee cannot be classified as a tipped employee "on any day… in which he has been assigned to work in an occupation in which tips are not customarily received." (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

440.    Plaintiffs' duties were not incidental to their occupation as delivery workers, but instead constituted entirely unrelated general restaurant work with duties including the non-tipped duties described above.

441.    In violation of federal and state law as codified above, Defendants classified Plaintiffs as tipped employees and paid them at the tip-credited rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

442.    Defendants also failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

## FIRST CAUSE OF ACTION
### (VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA)

443.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

444.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiffs, control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for their employment.

445.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

446.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

447.    Defendants failed to pay Plaintiffs at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

448.    Defendants' failure to pay Plaintiffs at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

449.    Plaintiffs have been damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA)

450.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

451.    Defendants, in violation of the FLSA, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of 29 U.S.C. § 207(a)(1).

452.    Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

453.    Plaintiffs have been damaged in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### (VIOLATION OF THE NEW YORK MINIMUM WAGE ACT)

454.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

455.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651. Defendants had the power to hire and fire Plaintiffs, have controlled the terms and conditions of employment, and have determined the rates and methods of any compensation in exchange for their employment.

456.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, have paid Plaintiffs less than the minimum wage.

457.    Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

458.    Plaintiffs have been damaged in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION
### (VIOLATION OF THE OVERTIME PROVISIONS OF THE
### NEW YORK STATE LABOR LAW)

459.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

460.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq*. and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime

compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek.

461.    Defendants failed to pay Plaintiffs in a timely fashion, as required by Article 6 of the New York Labor Law.

462.    Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

463.    Plaintiffs have been damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### (RECOVERY OF EQUIPMENT COSTS)

464.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

465.    Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, such as bicycles, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

466.    Plaintiffs were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
### (VIOLATION OF THE NOTICE AND RECORDKEEPING REQUIREMENTS OF THE NEW YORK LABOR LAW)

467.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

468.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), of their rate of pay, regular pay day, and such other information as required by NYLL §195(1).

469.    Defendants are liable to each Plaintiff in the amount of $2,500, together with costs and attorney's fees.

## SEVENTH CAUSE OF ACTION

**(VIOLATION OF THE WAGE STATEMENT PROVISIONS**
**OF THE NEW YORK LABOR LAW)**

470.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

471.    Defendants did not provide Plaintiffs with wage statements upon each payment of wages, as required by NYLL 195(3).

472.    Defendants are liable to each Plaintiff in the amount of $2,500, together with costs and attorney's fees.

**EIGHTH CAUSE OF ACTION**
**(VIOLATION OF THE UNAUTHORIZED DEDUCTION PROVISIONS OF THE NYLL)**

473.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

474.    Defendants made unauthorized deductions from Plaintiffs' wages in violation of NYLL § 193.

475.    Plaintiffs have   been damaged in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants:

(a)    Declaring that Defendants have violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs;

(b)    Declaring that Defendants have violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs;

(c)    Declaring that Defendants' violation of the provisions of the FLSA was willful as to Plaintiffs;

(d)    Awarding Plaintiffs) damages for the amount of unpaid minimum and overtime

wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(e)    Awarding Plaintiffs liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(f)    Declaring that Defendants have violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(g)    Declaring that Defendants have violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(h)    Declaring that Defendants' violations of the New York Labor Law have been willful as to Plaintiffs;

(i)    Awarding Plaintiffs damages for the amount of unpaid minimum and overtime wages, damages for any improper deductions or credits taken against wages;

(j)    Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(k)    Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(l)    Awarding Plaintiffs pre-judgment and post-judgment interest as applicable;

(m)    Awarding Plaintiffs, the expenses incurred in this action, including costs and attorneys' fees;

(n)      Providing that if any amounts remain unpaid upon the expiration of ninety days

following issuance of judgment, or ninety days after expiration of the time to appeal and no

appeal is then pending, whichever is later, the total amount of judgment shall automatically

increase by fifteen percent, as required by NYLL § 198(4); and

(o)      All such other and further relief as the Court deems just and proper.

Dated: New York, New York
        October 13, 2020

                                    MICHAEL FAILLACE & ASSOCIATES, P.C.

                        By:      _____
                                      Michael Faillace [MF-8436]

                                    MICHAEL FAILLACE & ASSOCIATES, P.C.
                                    Michael A. Faillace [MF-8436]
                                    60 East 42nd Street, Suite 2540
                                    New York, New York 10165
                                    Telephone: (212) 317-1200
                                    Facsimile: (212) 317-1620

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165
Faillace@employmentcompliance.com

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

April 7, 2016

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Alejandra Simon

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      07 de abril de 2016

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2020
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

January 15, 2016

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Alejandro Molina

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                              15 de enero de 2016

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

April 5, 2016

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                              Andres Rosario

Legal Representative / Abogado:           Michael Faillace & Associates, P.C.

Signature / Firma:                         Andres Rosario

Date / Fecha:                              05 de abril de 2016

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

January 29, 2016

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Antonio Martinez

Legal Representative / Abogado:         Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                           29 de enero de 2016

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2020
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

November 9, 2016

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          **Carlos Peri**

                                        Michael Faillace & Associates, P.C.

Legal Representative / Abogado:

                                        _Carlos Peri_

Signature / Firma:

                                        09 de noviembre de 2016

Date / Fecha:

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42ⁿᵈ Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

January 20, 2016

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                        Carlos Romero

Legal Representative / Abogado:       Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                         20 de enero de 2016

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

January 15, 2016

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Carmen Simon-Melgarejo

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                    15 de enero de 2016

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com

March 10, 2016

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                        Domingo Rosario Abad

Legal Representative / Abogado:       Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                         10 de marzo de 2016

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2020
New York, New York 10165
—————

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

January 15, 2016

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Esteban Morales

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:                *Esteban Morales*

Date / Fecha:                     15 de enero de 2016

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2020
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

———————

Faillace@employmentcompliance.com

January 15, 2016

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Hernan Alberto Cano Cadavid

Legal Representative / Abogado:          Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                    15 de enero de 2016

# Michael Faillace & Associates, P.C.

## Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

January 20, 2016

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Johnny S. Lapaix

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      20 de enero de 2016

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

March 24, 2016

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                              Jorge Raymundo Rivera

Legal Representative / Abogado:      Michael Faillace & Associates, P.C.

Signature / Firma:                          _Jorge Raymundo Rivera_

Date / Fecha:                                 24 de marzo de 2016

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

January 15, 2016

BY HAND


TO:     Clerk of Court,


I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                     Jose Romero


Legal Representative / Abogado:     Michael Faillace & Associates, P.C.


Signature / Firma:


Date / Fecha:                      15 de enero de 2016

# Michael Faillace & Associates, P.C.

## Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

April 6, 2016

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                         Julian Guzman

Legal Representative / Abogado:        Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                          06 de abril de 2016

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

February 2, 2016

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Maria Buestan Aguaiza

Legal Representative / Abogado:         Michael Faillace & Associates, P.C.

Signature / Firma:                      *Maria Buestan Aguaiza*

Date / Fecha:                           02 de febrero de 2016

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

February 9, 2016

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                         Maria Camas Lucero

Legal Representative / Abogado:        Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                          09 de febrero de 2016

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

February 2, 2016

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Maria Cecilia Buestan Paredez

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:                 *Maria C. Buestan*

Date / Fecha:                      02 de febrero de 2016

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

February 12, 2016

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Maung Soe

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                    12 de febrero de 2016

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

April 5, 2016

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Miguel Amadi Paulino

Legal Representative / Abogado:         Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                           05 de abril de 2016

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

January 15, 2016

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Pedro Canizares

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                                15 de enero de 2016

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com

January 15, 2016

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Ramon Estrella Infante

Legal Representative / Abogado:         Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                           15 de enero de 2016

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

---

Faillace@employmentcompliance.com

March 4, 2016

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Vincent Elliott

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                    04 de marzo de 2016

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

January 15, 2016

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Roman Cruz aka Ramiro Rojas Roman

Legal Representative / Abogado:      Michael Faillace & Associates, P.C.

Signature / Firma:                 _____

Date / Fecha:                      15 de enero de 2016